# In the United States Court of Federal Claims

|   |   |
|---|---|
| **DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY,** *Plaintiff,* v. **DISTRICT OF COLUMBIA,** *Intervenor-Plaintiff,* v. **THE UNITED STATES,** *Defendant.* | No. 23-2127 (Filed: June 12, 2025) |

*Emil Hirsch*, Carlton Fields, P.A., Washington, D.C., for Plaintiff.

*Wesley Rosenfeld,* Assistant Attorney General, *Joanna K. Wasik,* Chief, Housing and Environmental Justice Section, *William F. Stephens*, Assistant Deputy Attorney General, Public Advocacy Division, *Elizabeth A. Mellen*, Assistant Deputy Attorney General, *Coty Montag*, Deputy Attorney General, and *Brian L. Schwalb*, Attorney General for the District of Columbia, Office of the Attorney General for the District of Columbia, Washington, D.C., for Plaintiff-Intervenor.

*Vincent D. Phillips, Jr.*, Senior Trial Counsel, *Claudia Burke*, Deputy Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, and *Yaakov M. Roth*, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI**, *Judge*.

This matter involves a dispute between the District of Columbia Water and Sewer Authority (Plaintiff or DC Water) and the Armed Forces Retirement Home of Washington,

D.C.[1] (the Government or AFRH) regarding the alleged obligation of AFRH to pay DC Water for retrospective and current Clean Rivers Impervious Area Charges (CRIAC or impervious area charges) (Count I), District Department of Energy & Environment (DOEE) stormwater user fees (Count II), and sanitary sewer charges (Count III).

Before the Court is the Government's Partial Motion to Dismiss (ECF 29) requesting that the Court dismiss Counts I and II of the Amended Complaint (ECF 19).[2] For the following reasons, the Government's Motion is **DENIED.**

## BACKGROUND

In 1938, the parties' predecessors in interest entered into an agreement through which AFRH granted DC Water permission to build an underground water distribution reservoir on AFRH's property. *See DC Water I*, 156 Fed. Cl. 20, 28-32 (2021). AFRH granted its permission in consideration for the "perpetual right to use water from the water supply system of the District of Columbia." *Id*. at 30.

Sixteen years later, Congress enacted the District of Columbia Public Works Act of 1954 (the 1954 Act), Pub. L. No. 83-364, 68 Stat. 101 (1954). Section 212(a) of the 1954 Act, as currently amended and codified at D.C. Code § 34-2112(a), provides that "sanitary sewer charges prescribed [by the Act] shall be applicable to all sanitary sewer services furnished by the sanitary sewage works of the District . . . for direct use by the government of the United States or any department, independent establishment, or agency thereof…."

In *DC Water I*, Plaintiff sought to collect both charges for sanitary sewer services and impervious area charges,[3] pursuant to Section 212 of the 1954 Act. *See generally DC Water I*, 156 Fed. Cl. 20. Regarding the sanitary sewer charges, the Court held that Section 212 of the 1954 Act requires the United States to pay for all sanitary sewer services and that the cost of such services is based on what DC Water charges the United States to supply water. *Id*. at 48, 66. The Court denied Plaintiff's request for impervious area charges without prejudice after finding that the 1954 Act, which Plaintiff solely relied on as its basis for entitlement, did not allow Plaintiff to recover for impervious area charges. *Id*. at 56-63. Following briefing on damages, the Court later determined that Plaintiff was owed $633,150.91 in damages for FY2021 sewer charges and entered judgment in that amount. *DC Water I*, 2024 WL 3296347, at *10 (July 3, 2024). The Government appealed the

---

[1] The Armed Forces Retirement Home is "an independent establishment in the executive branch," created to provide "residences and related services for certain retired and former members of the Armed Forces." *See* 24 U.S.C. § 411 (2018).

[2] This case is related to *D.C. Water and Sewer Auth. v. United States*, (*DC Water I*), which is currently on appeal to the United States Court of Appeals for the Federal Circuit. *DC Water I*, No. 18-1586 (Fed. Cl.), *appeal docketed*, No. 24-2293 (Fed. Cir. Sept. 6, 2024). Count III of Plaintiff's Complaint is stayed pending final resolution of the appeal of the judgment in *DC Water I*. Order dated September 20, 2024 (ECF 18).

[3] In *DC Water I*, the parties and the Court sometimes referred to impervious area charges as stormwater charges. 156 Fed. Cl. at 25, 56-63.

judgment in *DC Water I* on August 28, 2024. *DC Water I*, No. 18-1586 (Fed. Cl.), *appeal docketed*, No. 24-2293 (Fed. Cir. Sept. 6, 2024). Plaintiff did not cross appeal the judgment.

In December 2023, Plaintiff filed the instant action, along with notice that it is directly related to *DC Water I*. Compl., ECF 1; ECF 2. Following the Government's notice of appeal in *DC Water I*, the Court stayed all proceedings regarding Count III pending the Federal Circuit's decision in that case. ECF 18 at 2. The Court permitted Counts I and II to progress. *See id*.

On September 30, 2024, Plaintiff filed an Amended Complaint. Am. Compl, ECF 19. As relevant here, in its Amended Complaint, DC Water alleges that AFRH was required, and failed, to pay its share of impervious area charges and DOEE stormwater user fees. *Id*.

## LEGAL STANDARD

Court of Federal Claims Rule 12(b)(6) permits the Court to dismiss an action for failure to state a claim upon which relief may be granted.[4] Dismissal is proper under Rule 12(b)(6) "when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021). The Court "must accept as true all the factual allegations in the complaint and … must indulge all reasonable inferences in favor of the non-movant." *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1274 (Fed. Cir. 2023) (quoting *Conti v. United States*, 291 F.3d 1334, 1338 (Fed. Cir. 2002)). To survive a challenge pursuant to Rule 12(b)(6), a plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## DISCUSSION

The Government argues that the Court should dismiss Counts I and II of the Complaint because: (1) Congress has never waived sovereign immunity with respect to impervious area charges, and (2) the AFRH has never been authorized to pay such charges or other stormwater fees with money from the AFRH Trust Fund. ECF 29 at 11. The Court addresses each argument in turn.

### I. Waiver of Sovereign Immunity

The Government first challenges Count I of the Complaint, alleging that there has been no waiver of sovereign immunity permitting recovery of the claimed impervious area charges. *Id*. Because the United States is generally immune from suits, this Court's jurisdiction is dependent on an unequivocal waiver of sovereign immunity by Congress. *United States v. Testan*, 424 U.S. 392, 399 (1976). Such waiver must be narrowly construed

---

[4] Court of Federal Claims Rule 12(b)(6) is the same as Federal Rule of Civil Procedure 12(b)(6). *Compare* RCFC 12(b)(6) *with* Fed. R. Civ. P. 12(b)(6).

3

in favor of the Government. *RHI Holding Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998).

Here, Plaintiff alleges it "has the authority to charge and collect from all its customers the Clean Rivers Impervious Area Charge" by virtue of D.C. Code §34-2107(a)(1), Am Compl. ¶ 4, and that Congress has waived sovereign immunity through the Clean Water Act, 33 U.S.C. § 1323(a).[5] *Id*. ¶ 36-39. In its Response to the Government's Motion, Plaintiff further clarifies that it "relies upon [The Clean Water Act,] not D.C. Code § 34-2107(a)(1), as the relevant statutory basis for the waiver of the federal government's sovereign immunity." ECF 34 at 3.

The Government challenges Plaintiff's reliance on the Clean Water Act but fails to articulate a plausible basis for dismissal. Quoting Plaintiff's assertion that "Congress *effectively* waived sovereign immunity" through the Clean Water Act, the Government claims that this implied waiver is insufficient to establish a waiver of sovereign immunity. ECF 35 at 2 (emphasis added). However, waiver is not determined based on the precision of the language in Plaintiff's brief, but instead, is based on whether there has been an unequivocal waiver expressed in the statute at issue. *See Testan*, 424 U.S. at 399. In fact, the Government later concedes that "the *City of Wilmington* case [P]laintiff cites holds that the Clean Water Act waives the United States' sovereign immunity only for reasonable service[] charges." ECF 35 at 5. This language indicates the Government believes that, generally speaking, the Clean Water Act *does* contain a waiver of sovereign immunity. The Court agrees and finds that there is binding precedent holding that the Clean Water Act includes a waiver of sovereign immunity. *See City of Wilmington v. United States*, 68 F.4th 1365, 1371 (Fed. Cir. 2023).

Despite this concession, the Government contends that Plaintiff's reliance on the Clean Water Act is misplaced. In the Government's view, because Plaintiff's alleged ability to collect impervious area charges arises under a code provision originally enacted in the 1954 Act, any applicable waiver must be contained in the 1954 Act.[6] ECF 29 at 12-14. However, this Court is not aware of any such legal requirement. In fact, the only legal basis cited in support of this argument, *DC Water I*, directly contradicts the Government's assertion. While the Court in that case held that there was no waiver of sovereign immunity

---

[5] The Clean Water Act, 33 U.S.C. § 1323(a), provides that "[e]ach department, agency, or instrumentality … of the Federal Government … shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution … including the payment of reasonable service charges."

[6] Notably, the Government's current position appears to be directly at odds with its position in *DC Water I*, where this Court recognized: "Defendant further argues that '[t]he substantive law the District must rely on for its claim for stormwater charges is 33 U.S.C. § 1323,' and notes 'the obvious applicability of 33 U.S.C. § 1323 to stormwater.'" 156 Fed. Cl. at 57.

for impervious area charges with respect to the 1954 Act, it also provided that "33 U.S.C. § 1323, as enacted in the Clean Water Act, may be relevant to plaintiff's claims regarding stormwater charges." *DC Water I.*, 156 Fed. Cl. 20, 62 (2021).

Nor is the Court swayed by the suggestion that the lack of an express waiver of sovereign immunity within D.C. Code § 34-2107(a)(1) itself constitutes a fatal flaw. *See* ECF 29 at 12 ("[D.C. Code § 34-2107(a)(1)] does not contain a waiver of sovereign immunity."). The plain language of the Clean Water Act, 33 U.S.C. § 1323(a), subjects federal entities to, and requires them to comply with, state and local water pollution requirements including the payment of reasonable service charges. As Plaintiff points out, it is "logically expected that such nonfederal laws would not contain express waivers of the immunity of the United States." ECF 38 at 4. The Court thus discerns no bar to Plaintiff's recovery arising solely from the absence of language waiving sovereign immunity in the plain language of D.C. Code § 34-2107 standing alone.

Finally, the Court rejects the Government's contention that dismissal is appropriate at this stage because, under the Clean Water Act, a determination of the reasonableness of the disputed fees is a prerequisite to establishing the necessary waiver of sovereign immunity. *See* ECF 35 at 5. Having acknowledged that the Clean Water Act *can* be read to encompass a waiver of sovereign immunity, as discussed above, the Government argues that "a determination that [] waiver exists in this case cannot be made at this juncture," because it must be based on a determination of the reasonableness of the charges. *Id*. at 4-5. But this is a factual issue and is premature for review at the Motion to Dismiss phase. *See id*. at 5 n.1 (arguing that the reasonableness of the charges cannot be established absent discovery on the issue). Indeed, in *City of Wilmington*, the case the Government cites for this proposition, a determination of the reasonableness of the charges occurred only after plaintiff's presentation of its case-in-chief at trial, as the Government acknowledges. 68 F. 4th at 1370; ECF 35 at 5. Accordingly, due to the Government's concession regarding the ripeness of its challenge, and for the reasons stated above, the Government's Motion to Dismiss Count I on the basis that the United States did not waive sovereign immunity fails.[7]

## II.    Availability of Appropriations

Next, the Government argues that, even if Congress waived sovereign immunity as to the fees at issue, there exists no appropriation from which Congress has authorized the payment of those fees. ECF 29 at 14-15. Before proceeding, the Court notes that, as a general matter, "incurring an obligation … is different from paying one." *Maine Cmty*

---

[7] In addition to its arguments regarding waiver of sovereign immunity, the Government briefly argues that the doctrine of res judicata bars Plaintiff from relitigating whether its claims can proceed under D.C. Code § 34-2107 because "this issue has already been decided against DC Water." ECF 39 at 2. However, the decision in *DC Water I* expressly states that it was made "without prejudice," indicating that it did not foreclose litigation on those issues in the future. *DC Water I,* 156 Fed. Cl. at 63. As such, the Court declines to dismiss this matter on the basis of res judicata.

*Health Options v. United States*, 590 U.S. 296, 308 (2020). The Supreme Court has recognized that Congress may create an obligation directly by statute without providing contemporaneous funding sources or details about how the obligation must be satisfied. *Id.* at 309, 312. Where Congress has created an obligation by statute, a subsequent failure to appropriate enough funds neither abrogates nor suspends the Government's pre-existing commitment to pay. *Id.* at 309. However, this rule has an exception. The Supreme Court has recognized that Congress may make an obligation contingent on available funding by "expressly limit[ing] an obligation to available appropriations or specific dollar amounts." *Id.* at 313.

Such limiting language is present here. Specifically, 33 U.S.C. § 1323(c)(2)(B) states that the Government "shall not be obligated to pay or reimburse" any reasonable service charge "except to the extent and in an amount provided in advance by any appropriations Act to pay or reimburse the fee, charge, or assessment." Although this subsection does not require that existing appropriations state specifically or expressly that they can be used to pay the impervious area charges or DOEE stormwater user fees that Plaintiff seeks to collect in this case, such language does, by its plain terms, limit the Government's obligations under Section 1323(a) to existing funds or funds appropriated "in advance" of such fees. *Id.* Plaintiff is therefore incorrect in suggesting that the AFRH could request supplemental appropriations for purposes of paying any obligation or judgment since such appropriations would not be "in advance" of the fee, charge, or assessment. *See id.*

The question, then, is whether available appropriations exist with which to pay the fees at issue. The Court considers two separate funds: (1) the Judgment Fund established under 31 U.S.C. § 1304(a) and (2) the AFRH Trust Fund.

### 1. The Judgment Fund

The Government argues that the Judgment Fund, established under 31 U.S.C. § 1304(a), is unavailable to pay any judgment entered by this Court with respect to the claimed fees under the Clean Water Act. This is because Section 1323(c)(2)(A) of the Clean Water Act states that the payment or reimbursement of reasonable service fees, including stormwater-related charges, "shall not be made using funds from any permanent authorization account in the Treasury." The Government argues, and Plaintiff does not dispute, that this precludes use of the Judgment Fund, which was established as a permanent, indefinite appropriation for paying final judgments not otherwise provided for by Congress. *See* 31 U.S.C. § 1304(a).

Although the term "permanent authorization account" is not defined by the Clean Water Act, the Court agrees with the Government that it ostensibly refers to the well-defined practice of permanent indefinite appropriations. *See* Government Accountability Office, *Principles of Federal Appropriations Law* 2-23 (4th ed. 2016), *available at* https://www.gao.gov/assets/2019-11/675709.pdf; *see also id.* at 2-10 ("[A] 'permanent indefinite' appropriation is open ended as to both period of availability and amount."). And

because the Judgment Fund is a permanent, indefinite appropriation, *Maine Cmty.*, 590 U.S. at 306 n.3, it follows that the Judgment Fund may not be used to pay any obligations arising under 33 U.S.C. § 1323(a).

### 2. *The AFRH Trust Fund*

Although the Judgment Fund is unavailable, Plaintiff argues that the AFRH Trust Fund is available to pay the impervious area or stormwater fees at issue. The Court agrees. The AFRH operates using a trust fund that is supported with, *inter alia*, monthly fees paid by residents of the Home as well as deductions from the pay of enlisted service members. 24 U.S.C. § 419(a) and (b). The Trust Fund is also supplemented with funds directly from the Treasury. For example, regarding the fiscal year ending on September 30, 2023, Congress provided as follows:

> For expenses necessary for the Armed Forces Retirement Home to operate and maintain the Armed Forces Retirement Home—Washington, District of Columbia, and the Armed Forces Retirement Home—Gulfport, Mississippi, to be paid from funds available in the Armed Forces Retirement Home Trust Fund, $75,360,000, to remain available until September 30, 2024, of which $7,300,000 shall remain available until expended for construction and renovation of the physical plants at the Armed Forces Retirement Home—Washington, District of Columbia, and the Armed Forces Retirement Home—Gulfport, Mississippi: *Provided,* That of the amounts made available under this heading from funds available in the Armed Forces Retirement Home Trust Fund, $25,000,000 shall be paid from the general fund of the Treasury to the Trust Fund.

Public Law 117-328, Dec. 29, 2022, 136 Stat. 4971. As illustrated above, Congress has appropriated funds annually to the AFRH for the express purpose of operating and maintaining the Home's facilities. Utility fees such as the impervious area charges and DOEE stormwater user fees sought here fall within this broad authorization. Accordingly, such operations and maintenance funds may be used to pay for the charges at issue, at least to the extent those funds remain available (a question which is inappropriate to resolve at this early stage of litigation).

The Government argues that 31 U.S.C. § 1321(b)(2) imposes tight controls on expenditures from the Trust Fund such that Congress must specifically and expressly authorize funds from the Trust Fund to pay for impervious area charges and stormwater fees. More precisely, because 31 U.S.C. § 1321(b)(2) states that expenditures from the AFRH Trust Fund "may be made only under annual appropriations and only if the appropriations are specifically authorized by law," the Government argues that this language precludes money being spent for impervious area charges and stormwater fees

because no statute enumerates these exact expenditures. The Court finds this argument unavailing. If Congressional practice is to authorize expenditures from the Trust Fund on a line-item basis or similar level of specificity, the Government has provided no evidence of such a practice and the Court has found none. To the contrary, as exemplified in the appropriations act cited above, congressional practice for the AFRH is to provide lump-sum appropriations "[f]or expenses necessary for the Armed Forces Retirement Home to operate and maintain the Armed Forces Retirement Home." Public Law 117-328, Dec. 29, 2022, 136 Stat. 4971. Similarly, that same statute specifies a portion of the AFRH Trust is "for construction and renovation." *Id.* Collectively, the statute lists two purposes for the appropriation: operations & maintenance and construction. Both of these purposes are "specifically authorized by law." So, while it is true that this appropriation does not specify that the AFRH may pay for impervious area charges or stormwater user fees, it does specify that the AFRH may spend money needed to operate the facility. If Plaintiff were trying to spend money on something that would fall under a purpose not specified in the statute, such as research & development costs, the Government may have a point, but that is not the case here. Simply put, the Court concludes that the AFRH is authorized to pay the impervious area charges and stormwater user fees using its operation and maintenance funds because such charges fit within the ordinary meaning of "expenses necessary" to operate and maintain the AFRH.

## CONCLUSION

For the foregoing reasons, the Government's Partial Motion to Dismiss (ECF 29) is **DENIED.** The parties **SHALL** submit a joint status report on or before **July 11, 2025**, including a proposal for further proceedings.

**IT IS SO ORDERED.**

_____
PHILIP S. HADJI
Judge